Commonwealth of Pennsylvania ex rel. Lee *v*. Lee, Appellant.

Argued March 13, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Graff, JJ.

*Robert T. Bolger,* and with him *W. A. Achey,* for appellant.

*William T. Connor,* and with him *John Monaghan,* District Attorney, *Hugh D. Scott, Jr.,* Assistant District Attorney, and *John R. K. Scott,* for appellee.

Opinion by Baldrige, J., April 18, 1930:

Anna D. Lee brought this proceeding, under the Act of April 13, 1867, P. L. 78, in the municipal court of Philadelphia, alleging that her husband, without reasonable cause, had deserted her and neglected to maintain her. After hearing, she was awarded the sum of $40 per week for her support. The husband took this appeal.

The jurisdiction of the court was attacked on the ground that the wife was a resident of Bucks County. The wife testified that she was domiciled in the City of Philadelphia where she rented an apartment for a year and that she considered that her home. The wife may bring her suit in the county where she resides as jurisdiction is not confined to the county where the defendant has his residence or where the desertion occurred: Commonwealth v. Tragle, 4 Pa. Superior Ct. 159; Commonwealth v. Plummer, 83 Pa. Superior Ct. 26; Commonwealth ex rel. Shetzline v. Shetzline, 84 Pa. Superior Ct. 100.

The testimony discloses that these parties were married on the 10th of March, 1926, and lived together until the 18th of May, 1929. The wife, who was 56 years of age, had been married three times prior to this last venture and had been divorced at least once, and the husband, who was 75 years of age, had been previously married and divorced.

The testimony in the case, as generally exists in controversies of this character, was contradicting. The wife charged her husband with failing to contribute anything toward her personal expenses, clothes, etc., during her married life, except $12; that he ignored her and refused to speak for days at a time; that he referred to her as a "damn fool" and humiliated her by making a false charge before their friends that she attempted to shoot him and his son; that he struck her on the breast with a telephone and charged her with putting ground glass in his food and trying to poison him, and directed his son to knock her over; that he told others that she had poisoned or given ground glass to her former husbands; that he refused for a period of fourteen months to allow her to entertain any of her friends in her home and for eleven months to permit any of her family to come to the house; that on several occasions he brought a constable or state police to the house to annoy her; and that

finally on May 18, 1929, he left, without just cause, to live with his daughter. Most of this character of testimony was denied by the appellant, he contending that she locked him out of the house, put his household effects out and called him and his son opprobrious names; refused to allow his son to come to their house; displayed a revolver on one occasion when she ordered him from the house; that he, in good faith, asked to return and live with her and that she has refused to take him back.

It is apparent that an unhappy state of affairs existed in this home. They both probably contributed to their domestic infelicity. There was no opinion filed by the trial judge in this case, but from his decree we must conclude that he, after seeing the parties and hearing the testimony, was of the opinion that the charge of the wife that her husband so offended her mental feelings by subjecting her to insults, humiliation and cruel treatment as to entirely defeat the legitimate object of matrimony was well founded. We think the testimony sustains this conclusion.

We are all of the opinion, however, that the order made was excessive. The wife inherited from her previous husband the sum of about $70,000, $20,000 of which was used for the creation of a trust fund for the sister of her deceased husband, but she evidently continues to possess the balance. She testified that her monthly income was a little over $150. She is evidently in error, or else she is not deriving an adequate return from her property, as the testimony shows that she has $25,000 invested in ground rent and mortgages aggregating $6,800, and $11,000 derived from sale of an antique business which is being held by an auctioneer as a small portion of it is claimed by her husband. She owns also a ten-acre farm in Bucks County, on which she refused to put a value, but it is evidently worth $35,000 to $40,000, an automobile, furnishings and personal effects, the value of which

was not given. Her testimony was not clear and convincing that she did not own some other securities than those mentioned. The husband is now retired and his income amounts in the neighborhood of $8,000, $7,500 of which is derived from the rent of a store. He places his expenses approximately at $7,300, which include interest on a mortgage which he testified amounted to $30,000. The husband gave his wife $20,000, which was invested in the Bucks County property, and he also contributed the sum of $1,000 to buy her a LaSalle automobile, which she still possesses.

This is not a case where the husband and wife have lived for a long period of years together, and where, by their joint efforts and thrift, property was accumulated. Here the marital life was not only discordant, but brief. Whatever money was accumulated by this appellant was not the result of any economies or endeavors upon the part of the wife.

We have read the testimony carefully and after taking into consideration the substantial contribution he made to his wife, the value of her estate, and all the other circumstances peculiar to this particular case, we feel that an order of $20 a week would be just and equitable. The order appealed from is modified by reducing the amount the defendant is to pay from $40 to $20 a week, and, as reduced, the order is affirmed, with the costs upon the appellant.